IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROGER L. BURNS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CA 3-94-CV-2770-R |
| | § | |
| CITY OF DALLAS, et al, | § | |
| | § | |
| Defendants. | § | |



## MEMORANDUM OPINION AND ORDER

Now before this Court is Plaintiff's Motion for Partial Summary Judgment. For the reasons stated below, the Motion is **GRANTED**.

### I. FACTUAL BACKGROUND

Plaintiff Roger Burns ("Burns") is the owner of a single family home located at 2015 Hudspeth Avenue, in Dallas, Texas. His struggles with the City of Dallas over the condition of this house underlie the present action. The details of Burns' interactions with the City provide a helpful starting point for this summary judgment analysis.

Since November 1992, Burns' home has been the subject of some scrutiny by the City of Dallas' Urban Rehabilitation Standards Board ("URSB"). At that time Burns was issued a Notice of Violation to repair fire damage and to "secure" (that is, to close) the structure. This notice was

MEMORANDUM OPINION AND ORDER — Page 1

sent by certified mail to 2015 Hudspeth and was signed for by Burns. Shortly thereafter, he obtained a building permit from the City of Dallas to perform general repairs to his home. The City's Code Enforcement inspection report notes that Mr. Burns had begun closure of the house. Closure was completed by Code Enforcement officials in February 1993 and the matter was referred to the URSB in August. During this time, the property was repeatedly inspected by City Code Inspectors and its vacancy noted in their reports.

In December 1993, Burns applied for a home improvement loan from the City of Dallas' Home Improvement Loan Program. This program is offered by the City of Dallas Department of Housing & Neighborhood Services, the umbrella department of the URSB. In the application, Burns listed his address as 1801 OverHilll Lane, Dallas, Texas. He also provided his work address and phone number.

On February 1, 1994 the URSB sent a notice of the February 14th demolition hearing to Burns at the Hudspeth Avenue address via certified mail, which was returned on February 18, unsigned. URSB also mailed the notice of the demolition order by certified mail on February 24, again to the Hudspeth Avenue address. Around this same time, the City of Dallas mailed Burns a property tax statement for the Hudspeth property to 3011 Sunnyvale. The balance was due on February 28, 1994. A reasonable jury would accept that this statement was mailed at least a month before its due date, as does this Court. At any rate, it was sent during approximate same time period that the demolition notices were mailed and it was certainly mailed before the URSB mailed the notice of demolition order which advised Burns of his right to request a rehearing. Needless to say, Burns did not attend the hearing nor did he request a rehearing after the demolition was ordered. The demolition of Mr. Burns' home was carried out on June 9, 1994.

**MEMORANDUM OPINION AND ORDER — Page 2**

In his First Amended Complaint, Burns alleges that the City of Dallas, and several individual defendants, violated his federal civil rights under Title 42 U.S.C. § 1983 and the U.S. Constitution and deprived him of his property without due process of law. Burns now moves for partial summary judgment against one defendant, the City of Dallas. By his motion, Plaintiff claims to be entitled to relief against the City for violating his constitutional right to due process and Fourth Amendment right to protection from unreasonable warrantless seizure. Plaintiff does not seek relief against the individually named defendants in this motion, nor will the Court address this issue.

## II. DISCUSSION

### A. Summary Judgment Standards

Rule 56(c) of the Federal Rules of Civil Procedure allows summary judgment only where there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law.[1] All reasonable doubts and inferences must be decided in the light most favorable to the party opposing the motion.[2] Indeed, as long as there appears to be some evidentiary support for the disputed allegations, the motion must be denied.[3]

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

[1] FED. R. CIV. P. 56(c) (1994).

[2] *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 640 (5th Cir. 1985).

[3] See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986); *Coke v. Gen. Adjustments Bureau*, 640 F.2d 584, 595 (5th Cir. 1981 (en banc)).

MEMORANDUM OPINION AND ORDER — Page 3

with affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact.[4] Where the nonmoving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its summary judgment burden by showing that there is an absence of evidence to support the nonmoving party's case.[5] Once the moving party has satisfied its burden, the nonmoving party must go beyond the pleadings and--by its own affidavits or by depositions, answers to interrogatories, and admissions on file--set forth specific facts showing a genuine issue for trial.[6] Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[7]

**B.    § 1983**

Burns contends that the City of Dallas violated Title 42 U.S.C. §1983 when it deprived him of his property without due process and when it entered and seized his property without a warrant. Section 1983 protects the rights of citizens guaranteed by the Fourteenth Amendment.[8] The defendant contends that summary judgment is not appropriate because Burns has not been injured by a policy or custom of the City of Dallas.

---

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

[5] *Id.* at 325.

[6] *Id.* at 324; *Anderson v. Liberty Lobby Inc.*, 477 U.S. at 256, 106 S.Ct. at 2514.

[7] *Celotex*, 477 U.S. at 322.

[8] Mathias v. Bingley, 906 F.2d 1047, 1051 (5th Cir. 1990) citing Home Telephone & Telegraph Co. v. Los Angeles, 227 U.S. 278 (1913); Swann v. City of Dallas, 922 F. Supp. 1184, 1204 (N.D. Tex. 1996).

**MEMORANDUM OPINION AND ORDER — Page 4**

42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any right, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

By its terms, § 1983 creates no substantive rights; it merely provides remedies for derivations of rights established elsewhere.[9] Two elements are required to state a claim for relief under § 1983: (1) that the defendant acted under color of state law, and (2) that the defendant's actions deprived the plaintiff of some right, privilege, or immunity secured by the Constitution or laws of the United States.[10]

1. Municipal Liability

In order to defeat summary judgment on these claims, Plaintiff must produce evidence showing not only that the City's actions deprived him of federally protected rights, but also that an official policy or custom of the City caused the deprivation or violation of rights.[11] While local government may be the target of a § 1983 action, it may not be liable under a theory of respondeat superior.[12] "[C]ity policy, for which the city may suffer liability, may be made by city lawmakers 'or by those whose edicts or acts may fairly be said to represent official policy.'... The governing body must expressly or impliedly acknowledge that the agent or board acts in lieu of

---

[9] *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).

[10] *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)

[11] *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978); *see Fraire v. City of Arlington*, 957 F.2d 1268, 1277 (5th Cir.), *cert. denied*, 506 U.S. 973 (1992).

[12] *Bennett v. City of Slidell*, 728 F.2d 762, 766 (5th Cir. 1984).

**MEMORANDUM OPINION AND ORDER — Page 5**

the governing body to set goals and to structure and design the area of delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent or board."[13]

This Court must first determine whether the URSB acts "in lieu" of the City such that its acts represent official policy within the meaning of *Bennett*. This question has already been answered by this district in *Swann v. City of Dallas*.[14] In that case, also an alleged due process violation for failure to notify the property owner of the demolition hearing, Magistrate Judge Boyle read Chapter 27 of the Dallas City Code[15] as set[ting] and carr[ying] out the policy for the City of Dallas with regard to establishing minimum standards applicable to residential and nonresidential structures."[16] Thus, the court concluded that the URSB was an "official policymaker for the City in this area of responsibility rendering the City liable."[17] Furthermore, for the purposes of § 1983, it is undisputed that the URSB, and its administrator Allen, were acting under color of state law at the time of the actions underlying this suit.[18]

2.  Due Process

Having determined that the City is vulnerable for the URSB's actions, the Court must next decide whether the URSB's actions, as a matter of law, deprived Burns of a federally protected

---

[13] *Id.* at 768-69.

[14] 922 F. Supp. 1184 (1996).

[15] Chapter 27 contains the City's "Minimum Urban Rehabilitation Standards."

[16] *Swann*, 922 F. Supp. at 1205.

[17] *Id.* at 1205.

[18] *See id.* at 1205.

MEMORANDUM OPINION AND ORDER — Page 6

right. The Fourteenth Amendment ensures due process where a property interest is at stake. This means that "[a]n owner of property subject to deprivation by state action is entitled to means as certain as mail to ensure actual notice if her name and address are reasonably ascertainable through the exercise of reasonably diligent efforts."[19] The notice "must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"[20] Reasonable diligence can vary depending on the circumstances. For example the type of property interest at stake or the type of recording system may bear on the analysis.[21] Therefore reasonable diligence in one context may become impossible in the next.[22]

Applying this standard to the undisputed facts results in a judgment as a matter of law against the City. The record establishes that the City knew that Burns no longer resided at 2015 Hudspeth, yet they continued to send notice of the property's demolition to that address only. The undisputed facts show this to be true for several reasons. First, the URSB referral form stated that the property was vacant and the URSB docket sheet stated that the property had been vacant for over one year. Second, envelopes containing both notice of the hearing and of the impending demolition were returned to the URSB stamped "Return to Sender" and the certified mail return cards unsigned. Third, the City--specifically the Department of Housing and

---

[19] *Small Engine Shop, Inc. v. Cascio*, 878 F.2d 883, 887-88 (5th Cir. 1989); citing *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983).

[20] *Barrera-Montenegro v. United States of America and DEA*, 74 F.3d 657, 660 (5th Cir. 1996); quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

[21] *Small Engine Shop, Inc.*, 878 F.2d at 889.

[22] *Id.*

**MEMORANDUM OPINION AND ORDER — Page 7**

Neighborhood Services, umbrella department of the URSB—had in its possession other addresses for Mr. Burns, provided by Mr. Burns himself in his home improvement loan application. The fact that Burns applied for this loan to correct code violations on the very property in question makes it even more unreasonable that the URSB continued to mail notice to the incorrect address.

Finally, at least two city departments had in their records other addresses for Burns before the URSB held its hearing in February 1994. In December 1993 the City's Home Improvement Loan Program mailed an application for a Home Improvement Loan to Burns at 1801 OverHill Lane. As noted above, the application contained not only Mr. Burns' new address, but also his former Hudspeth Avenue address and the address of his place of employment. Moreover, the City mailed a Property Tax Statement due February 28, 1994 to his address at 3011 Sunnyvale.[23] This bill must have been mailed during the same period as was the notice of the February 14th hearing and certainly before the notice of the demolition was mailed on February 24th. Therefore, it is undisputed that City records contained other addresses for Mr. Burns. Knowing that Burns no longer lived in his home on Hudspeth Avenue, the URSB should have inquired into whether another address for Burns was available in City records. In this, the computer age, it should have been a relatively simple exercise to consult its own department's records and City tax records. "When the [city] has in its possession information which would enable it to effect actual notice on an interested party, it is unacceptable...to ignore that information" and rely on other means of

---

[23] The fact that there are at least two other addresses for Mr. Burns' in the record and is unclear which was correct is irrelevant because the question is whether the URSB exercised reasonable diligence in ascertaining an address other than the vacant Hudspeth address. Sending it to either of these addresses, even incorrectly, would at least have been an indication that the URSB made some attempt to locate Mr. Burns' new address.

MEMORANDUM OPINION AND ORDER — Page 8

notification.[24] In fact, at some point the URSB and the Revenue & Tax Department must have finally communicated, because the City was able to send the bill for the costs of the demolition of the 2015 Hudspeth home to Burns' correct address at 3011 Sunnyvale. Therefore, this Court finds that, as a matter of law, the URSB failed to exercise reasonable diligence in ascertaining Mr. Burns' correct address.

3.  Warrantless Seizure

Burns also contends that the warrantless entry onto his property to carry out the demolition violated his Fourth Amendment rights. The Fourth Amendment, made applicable to the States by the Fourteenth Amendment,[25] provides that the "right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures, shall not be violated...."[26] The "'basic purpose of this Amendment...is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials'" whether they are health, fire, or building inspectors.[27] This protection against unreasonable searches and seizures fully applies to the seizure of residential property in the civil context.[28]

The Court must first determine whether the demolition of Mr. Burns' home was in fact a "seizure." A seizure is defined as a "meaningful interference with an individual's possessory

---

[24] *Barrera-Montenegro*, 74 F. 3d 657, 660 (5th Cir. 1996).

[25] *Ker v. California*, 372 U.S. 23, 30 (1963).

[26] U.S. CONST. amend. IV.

[27] *Conner v. City of Santa Ana*, 897 F.2d 1487, 1490 (9th cir. 1990); quoting *See v. Seattle*, 387 U.S. 541 (1967).

[28] *Soldal v. Cook County, et. al*, 506 U.S. 56, 67, n. 11 (1992)

MEMORANDUM OPINION AND ORDER — Page 9

interests in that property."[29] As a result of the state action in this case, Mr. Burns has been permanently deprived of his possessory interest in his home in that it is no longer standing. This certainly qualifies as a "seizure" for purposes of the Fourth Amendment.[30]

To invoke Fourth Amendment protection, the seizure must be an unreasonable one. Whether or not a privacy or liberty interest is implicated by the seizure is not determinative of whether the seizure is unreasonable.[31] Nor does the fact that the seizure took place without an accompanying search insulate the seizure from Fourth Amendment scrutiny.[32] "What matters is the intrusion on the people's security from governmental interference...."[33] The City's demolition of Mr. Burns' home implicated both property as well as privacy rights. The Supreme Court has emphasized that "at the very core of the Fourth Amendment stands the right of a man to retreat into his own home."[34] Mr. Burns cannot retreat into his own home if it has been knocked down. The fact that he was no longer physically residing there is irrelevant. This Court has no trouble concluding that the demolition of Mr. Burns' home constituted an unreasonable seizure which must comply with Fourth Amendment requirements.[35]

---

[29] *Id.* at 61.

[30] *See, e.g., Soldal*, 506 U.S. at 72 (holding that the towing away of a mobile home is a seizure invoking protection of the Fourth Amendment).

[31] *Soldal*, 506 U.S. at 65.

[32] *Id.* at 68.

[33] *Id.* at 69.

[34] *Id.* at 61.

[35] *See, e.g., Camera v. Municipal Court*, 387 U.S. 523, 532 (1967) (requiring City housing code enforcement searches and seizures to comply with the Fourth Amendment warrant requirement); *Conner v. City of Santa Ana*, 897 F.2d 1487, 1490 (9th Cir. 1990) ("It is clear that

The Fourth Amendment requires that the state must have a valid warrant to effectuate a seizure.[36] This warrant requirement applies regardless of how "reasonable" the warrantless seizure appeared in light of the pre-seizure process.[37] Because the seizure of Mr. Burns' home occurred without any judicial authorization, the seizure, as a matter of law, violated the Plaintiff's Fourth Amendment rights.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Plaintiff's Motion for Partial Summary Judgment against the City be **GRANTED**. The issues of liability of the individual defendants as well as damages against the City remain for trial.

SIGNED THIS 11 DAY OF MARCH, 1996.

*Jerry Buchmeyer*
UNITED STATES DISTRICT COURT
CHIEF JUDGE JERRY BUCHMEYER

---

the warrant requirement of the Fourth Amendment applies to entries onto private land to search for and abate suspected nuisances.").

[36] *Cady v. Domborwski*, 413 U.S. 433, 439 (1973).

While there are numerous exceptions to this rule, none are relevant to this case.

[37] *Conner*, 897 F.2d at 1492.

MEMORANDUM OPINION AND ORDER — Page 11